IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANTE CARTER,           Petitioner, | )<br>)<br>) |
| vs. | )     Civil Action No. 06-952 |
| LOUIS S. FOLINO, et al.,           Respondents. | )<br>)<br>) |

<u>MEMORANDUM ORDER</u>

On July 20, 2006, this case was referred to United States Magistrate Judge Robert C. Mitchell for pretrial proceedings in accordance with the Magistrates Act, 28 U.S.C. §§ 636(b)(1)(A) and (B), and Rules 72.1.3 and 72.1.4 of the Local Rules for Magistrates.

On September 26, 2006, the magistrate judge filed a Report and Recommendation (Docket No. 14), recommending that the petition for writ of habeas corpus filed by petitioner (Docket No. 3) be dismissed and that a certificate of appealability be denied for lack of a viable federal claim.

Service of the Report and Recommendation was made on the parties, and the petitioner filed objections (Docket No. 16) on October 11, 2006.

In his objections, petitioner contends, inter alia,[1] that the magistrate judge erred in concluding that his first claim–that the trial judge, Walter Little, denied him the right to a fair and impartial trial by engaging in a pattern of protracted and unwarranted participation in the jury

---

[1] Petitioner presents four other objections, namely that the magistrate judge: 1) failed to comply with Local Rule 9.4, 2) erred in determining that petitioner procedurally defaulted his claim that trial counsel was ineffective for failing to object to the jury instructions, and erred in concluding that the state court's rulings that trial counsel was not ineffective for failing to call 3) two witnesses and 4) four character witnesses were neither contrary to nor an unreasonable application of clearly established federal law.  These objections are overruled as being without merit.

trial–was raised only as an issue of state law.  Upon review, the Court concludes that, although the majority of the discussion in his brief in the Superior Court related to Pennsylvania law, petitioner did raise the issue as one of federal law.  See Answer Ex. 15 at 11 ("The conduct of Judge Little was an affront to the Sixth Amendment of our Constitution in that he single-handedly used the powers of his office to override the sacred responsibility entrusted to Dante Carter's jury of rendering a verdict based on the evidence presented.")  Thus, the issue has been exhausted and is ripe for review.  Nevertheless, for the reasons that follow, petitioner has not demonstrated that he is entitled to relief with respect to this issue.

> As described by the Pennsylvania Superior Court:
>
> the record reveals a spirited, and at times hostile, series of interchanges between counsel and the court.  While many of the statements to which counsel objected can be characterized as mere clarification on the court's part, others arguably went beyond the court's role ....
>
> Several of the instances raised by appellant involved the trial court's dissatisfaction with the way in which defense counsel presented testimony, in particular the manner in which he sought to introduce a document or prior statement.  Rather than instructing counsel on the method required in his courtroom, the trial judge himself often asked the foundational questions of the witness.  In other instances, the court appeared impatient with counsel's efforts to elicit certain information from witnesses or with a witness's inability to understand the question posed to him.  The trial judge then took it upon himself to pose his own questions to the witness.  Finally, the court more than once continued to question a witness after both sides completed their examinations.  While the court characterized this conduct as mere clarification, it was, in many instances, unnecessary.
>
> We are particularly troubled by the court's own examination of witnesses, including Elmore Anderson, the victim's mother and appellant.  With respect to Mr. Anderson, appellant argues that the court' questions assisted the prosecution in establishing that although the two witnesses at times appeared to contradict one another on the timing of events, their testimony was

> not inconsistent.  Further, appellant characterizes the court's questioning of appellant as a challenge to his testimony, not a clarification thereof.  Particularly troubling is an exchange that took place while appellant, *on direct examination by his counsel,* sought to explain his actions on the day of the shooting:
>> Question [by counsel]: When you shot at Yare, why did you pull the trigger?
>> Answer [by appellant]: Because I was scared for my life, sir.  He was shooting at me.
>> Question: Did you think you were going to die?
>> Answer: Yes.
>> Question: Could you have run away?
>> Answer: What do you mean run away?  Where was there to go?
>> *The Court: You could have went [sic] back into the house.*
>> Appellant: Could I have went back into the house?
>> The Court: Yes.
>> Appellant: Yes, I could have went back in the house.

(Answer Ex. 17 at 7-9) (citing T.T. at 485) (footnote and other citations omitted).

The Superior Court's analysis relied upon Pennsylvania cases, specifically Commonwealth v. Myma, 123 A. 486 (Pa. 1924), and Commonwealth v. Roldan, 572 A.2d 1214 (Pa. 1990).  In those cases, the Pennsylvania Supreme Court established that a trial judge has the right to interrogate witnesses, but should refrain from extended examinations; and that he should not indicate an opinion on the merits, or a doubt as to a witness's credibility or do anything to indicate a leaning to one side or another, without explaining to the jury that all these matters are for them.  "Retrial is appropriate 'only when the trial court's questioning is prejudicial, that is when it is of such nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial.'" (Answer Ex. 17 at 7) (quoting Commonwealth v. Purcell, 589 A.2d 217, 224 (Pa. Super. 1991)), appeal denied, 604 A.2d 248 (Pa. 1992).

After reviewing the relevant caselaw, the Superior Court concluded that:

> the trial court, at times, did more than merely clarify testimony already given. However, cognizant of our standard of review, we do not believe that the court's conduct rose to the level of denying appellant a fair trial.
>
> While defense counsel has exposed every conceivable incident of judicial impropriety in the record, our exhaustive review of the over five hundred and fifty page transcript reveals that most of the allegations by counsel are unfounded. Many times, counsel took an inordinately long time to make a point of his own or contradict a point made by his opponent. At other times, counsel's questions were confusing, repetitive or argumentative. In response, the court intervened. The discord between counsel and the court was by no means attributable solely to the trial judge. In the majority of instances, the court acted appropriately in striking the delicate balance discussed in **Roldan, supra.**
>
> While the specific excerpts set out above demonstrate that there was indeed objectionable conduct by the court, we must consider these errors against the tone of the trial *in its entirety* to determine whether the actions of the court were such that appellant was deprived of a fair trial. We conclude that appellant was not denied a fair trial and his conviction, therefore, must stand.

(Answer Ex. 17 at 9-10) (footnoted omitted).

The fact that the Superior Court's decision does not cite United States Supreme Court cases does not mean that it was contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. The Supreme Court has held that a state court's decision "does not require citation of our cases–indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002).

An impartial judge is a necessary component of a fair trial. In re Murchison, 349 U.S. 133, 136 (1955); Tumey v. Ohio, 273 U.S. 510, 532 (1927). The Supreme Court has explained that "[i]t is obvious that under any system of jury trials the influence of the trial judge on the jury is necessarily and properly of great weight, and that his lightest word or intimation is

received with deference, and may prove controlling." Carter v. Kentucky, 450 U.S. 288, 302 n.20 (1981) (quoting Starr v. United States, 153 U.S. 614, 626 (1894)).  Indeed, the Court has held that the lack of an impartial trial judge is one of very few structural errors, constitutional rights "so basic to a fair trial that their infraction can never be treated as harmless error." Chapman v. California, 386 U.S. 18, 23 & n.8 (1966).  See also Edwards v. Balisok, 520 U.S. 641, 647 (1997).

However, the Supreme Court has never held or clearly established that an appearance of bias on the part of a state trial court judge, without more, violates the Constitution. Johnson v. Carroll, 369 F.3d 253, 262 (3d Cir. 2004) (reversing district court's grant of habeas writ based on trial judge's out-of-court conversation with former prosecutor about petitioner's alleged threat against prosecutor 18 years before).  See also Bracy v. Gramley, 520 U.S. 899, 904 (1997) ("most questions concerning a judge's qualifications to hear a case are not constitutional ones").

Moreover, the term "judicial bias" encompasses two different concepts.  As aptly described by the Sixth Circuit:

> One group of cases addresses charges of "judicial bias" stemming from a trial judge's "personal interest," or "stake," in the outcome of a case, usually derived from some extrajudicial association with the cause or with one of the parties.  The second group of cases is more appropriately described as the "judicial misconduct" cases. This second group consists, for the most part, of cases in which the trial judge is accused of conducting the proceedings in a manner that strongly suggests to the jury that the judge disbelieves the defendant's case, or for other reasons, thinks the prosecution should prevail....
>
> The two groups of judicial bias cases do not trace parallel lines and they may converge.  Experienced litigators are well aware that in criminal trials particularly, it is entirely possible that a trial judge who has no personal interest in the case or relationship with

> any of the parties or their counsel will nevertheless conduct the trial in a manner such that his interruptions, tone of voice, facial expressions, criticism of counsel, or comments on the evidence strongly suggest to the jury that the prosecution should prevail. In such cases, strictly speaking, it is the trial judge's "judicial misconduct" as distinguished from an antecedent "personal interest" which may result in impermissible judicial bias ... [which,] in turn, can deprive the defendant of a fair trial...

Allen v. Hawley, 74 Fed. Appx. 457, 459-60 (6th Cir. 2003), cert. denied, 541 U.S. 1046 (2004).

Petitioner's claim herein falls under the second category, in that he contends that Judge Little's conduct during his trial strongly suggested to the jury that the prosecution should prevail.

In Liteky v. United States, 510 U.S. 540 (1994), the Supreme Court discussed the issue of when a judge's alleged "misconduct" requires recusal. The Court stated that:

> opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. An example of the latter (and perhaps of the former as well) is the statement that was alleged to have been made by the District Judge in Berger v. United States, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921), a World War I espionage case against German-American defendants: "One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans" because their "hearts are reeking with disloyalty." Id., at 28 (internal quotation marks omitted). Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration–even a stern and short-tempered judge's ordinary efforts at courtroom administration– remain immune.

Id. at 555-56.  The Court concluded that the behavior of the trial judge in that case–questions he put to certain witnesses, an alleged "anti-defendant tone," his cutting off of testimony said to be relevant to the defendants' state of mind and his post-trial refusal to allow petitioners to appeal in forma pauperis–did not rise to the level to require recusal.  The Court noted that:

> All of these grounds are inadequate under the principles we have described above: They consist of judicial rulings, routine trial administration efforts, and ordinary admonishments (whether or not legally supportable) to counsel and to witnesses.  All occurred in the course of judicial proceedings, *and* neither (1) relied upon knowledge acquired outside such proceedings nor (2) displayed deep-seated and unequivocal antagonism that would render fair judgment impossible.

Id. at 556.

Liteky concerned the scope of 28 U.S.C. § 455(a), which states that a federal judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  Nevertheless, a number of courts have relied upon it to address the issue of whether a state trial judge's alleged misconduct so infected the entire process as to deny the petitioner a fair trial and warrant the granting of habeas relief.  See Jones v. Luebbers, 359 F.3d 1005, 1013-15 (8th Cir. 2004); Rowsey v. Lee, 327 F.3d 335, 341 (4th Cir. 2003); Alley v. Bell, 307 F.3d 380, 386 (6th Cir. 2002).  In the Johnson case, although the Court of Appeals for the Third Circuit distinguished Liteky's discussion of § 455(a) from a habeas corpus situation, it nonetheless noted that the petitioner did not allege and the record did not support the conclusion that the trial judge's behavior evidenced such "deep-seated favoritism or antagonism" as to warrant relief.  369 F.3d at 260.

The issue before this Court is not whether Judge Little's conduct during the trial was above reproach.  Nor is it the function of this Court to agree or disagree with the Superior

Court's assessment that Judge Little's conduct did not violate Pennsylvania law. "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221 (1982) (citations omitted). Rather, the question is whether the Superior Court's analysis resulted in a decision that was contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court in Liteky.

The Court concludes that it did not, for several reasons. First, the hostile exchanges between Judge Little and petitioner's counsel occurred in sidebars, outside the presence of the jury. See Maurino v. Johnson, 210 F.3d 638, 645 (6th Cir. 2000). Second, a court is permitted to question the witnesses and most of Judge Little's questioning was in aid of clarification, although, as the Superior Court noted, it may not have been necessary. See United States v. Wilensky, 757 F.2d 594, 597-98 (3d Cir. 1985). Third, a review of Judge Little's comments reveals them to be, at most, "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as ... judges, sometimes display." Liteky, 510 U.S. at 555-56. As such, they do not rise to the level of demonstrating that petitioner was denied a fair trial and the Superior Court's decision is neither contrary to nor an unreasonable application of this principle.

AND NOW, this 30th day of October, 2006,

IT IS ORDERED that the petition for writ of habeas corpus filed by petitioner (Docket No. 3) is dismissed and that a certificate of appealability is denied for lack of a viable federal claim.

_____Magistrate Judge Mitchell's Report and Recommendation dated September 26, 2006 (Docket No. 14) is adopted as the opinion of the Court, as supplemented by the instant Memorandum Order.

                                        s/ Terrence F. McVerry
                                        United States District Judge

cc:        Dante Carter
            DM-1509
            SCI Greene
            175 Progress Drive
            Waynesburg, PA 15370

            Ronald M. Wabby, Jr., Esquire
            Email: ron.wabby@da.allegheny.pa.us